25CA0184 Peo in Interest of CFJ 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0184
El Paso County District Court No. 22JV218
Honorable Larry E. Schwartz, Judge
Honorable Lara Y. Nafziger, Magistrate

---

The People of the State of Colorado,

Appellee,

In the Interest of C.F.J. and K.N.J., Children,

and Concerning A.J.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Kenneth Hodges, County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Ainsley E. Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, A.J. (mother) appeals the judgment allocating parental responsibilities for C.F.J. and K.N.J. (the children) primarily to their maternal grandmother. We affirm.

## I.    Background

¶ 2    In October 2022, the El Paso County Department of Human Services received a referral that the twin children tested positive at birth for methamphetamine and amphetamine.  The Department and mother agreed to a safety plan that required mother, who was living with the children and their maternal grandmother, to have all of her contact supervised by maternal grandmother and to take urinalysis tests (UAs).  However, according to the Department, mother tested positive on a UA for methamphetamine and amphetamine and failed to provide proper medical care for the children.  The Department then filed a petition in dependency and neglect.

¶ 3    The juvenile court adjudicated the children dependent or neglected and adopted a treatment plan for mother that required her to (1) eliminate substance use; (2) have a healthy parent-child

relationship; (3) communicate with the Department; and (4) address mental health needs.

¶ 4 The children remained in their placement at maternal grandmother's home for the duration of the case. Mother also remained at maternal grandmother's home but had only supervised family time.

¶ 5 The guardian ad litem (GAL) moved for an allocation of parental responsibilities (APR) that gave maternal grandmother physical custody of the children. After an evidentiary hearing in October 2024, a magistrate adopted the GAL's proposed APR and entered a judgment giving (1) maternal grandmother physical custody; (2) mother supervised parenting time; and (3) maternal grandmother and mother joint decision-making responsibility.

¶ 6 Mother then petitioned for juvenile court review of the magistrate's ruling, asserting that the magistrate erred by entering the APR because the Department failed to make reasonable efforts to reunite her with the children. The juvenile court affirmed the magistrate's judgment.

## II.    Discussion

¶ 7    Mother contends that the evidence was insufficient to establish a compelling reason to grant physical custody of the children to grandmother and, therefore, the magistrate erred by entering the APR.  We disagree.

### A.    Standard of Review

¶ 8    The allocation of parental responsibilities is a matter within the juvenile court's discretion.  *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law.  *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

¶ 9    A juvenile court's review of a magistrate's decision is like appellate review, and the court must defer to the magistrate's factual findings unless they are clearly erroneous.  C.R.M. 7(a)(9); *see also People in Interest of N.G.*, 2012 COA 131, ¶ 37.  Our review of the juvenile court's decision is effectively a second layer of appellate review, so we apply the same clearly erroneous standard to the magistrate's factual findings, but we review legal conclusions de novo.  *See In re Parental Responsibilities Concerning D.P.G.*, 2020

COA 115, ¶ 15.  The proper burden of proof is also a question of law that we review de novo.  *LeHouillier v. Gallegos*, 2019 CO 8, ¶ 18.

## B.    Analysis

¶ 10    In dependency and neglect proceedings, the juvenile court has jurisdiction to allocate parental responsibilities between parents and nonparents.  § 19-3-508(1)(a), C.R.S. 2024; *People in Interest of H.K.W.*, 2017 COA 70, ¶ 12.  An allocation of parental responsibilities is governed by the Children's Code.  *People in Interest of J.G.*, 2021 COA 47, ¶ 13.  The overriding purpose of the Children's Code is to protect children's welfare and safety by providing procedures through which the children's best interests can be served.  *Id.* at ¶ 19.  Therefore, the court must allocate parental responsibilities in accordance with the children's best interests.  *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011).

¶ 11    Although a finding of parental unfitness is not required, *People in Interest of M.D.*, 2014 COA 121, ¶ 43; *L.B.*, 254 P.3d at 1208, the court may only award permanent custody of children to a nonparent if the moving party (here, the GAL with the support of

4

the Department) establishes a compelling reason why it is in the children's best interests for the nonparent to have custody.

¶ 12    The magistrate determined that the GAL and the Department had "met their burden" to show that an APR was in the children's best interests.  The magistrate found that mother had not complied with her treatment plan or otherwise addressed the issues that gave rise to the petition and the adjudication of the children as dependent and neglected.  Accordingly, the magistrate had no basis for knowing whether mother could safely parent the children on her own.

¶ 13    The magistrate's findings are supported by the record.  The caseworker, who was the sole witness at the hearing, testified as follows:

- The Department opened the case because of concerns about mother's substance use and one of the children missing medical appointments.

- Mother did not complete a substance use evaluation or treatment or submit to UAs.

- Mother did not demonstrate that she understood the impact of her substance use on her ability to parent the children.

- Mother did not complete a mental health evaluation or complete any mental health treatment during the case.

- The Department had received a referral about eight months earlier concerning mother's mental health. According to the referral, mother reported that "there were agents trying to poison [her and the children] through the cables," and mother wanted to put tin foil on the children's cribs to protect them from attacks by "rays and blocks." The referral also said that mother "heavily used alcohol."

- Mother did not sign releases and her communication with the Department was "[v]ery sporadic."

- Mother had not addressed any of the safety concerns that prompted the Department to file a petition, and she was not "a safe and appropriate parent at th[at] time."

¶ 14    Thus, while the magistrate did not explicitly state that the GAL and Department had established a "compelling reason" for the APR, the magistrate did find that (1) an APR giving maternal grandmother physical custody was in the children's best interests; (2) mother had not addressed the issues that caused the case to be opened; (3) despite the requirements of the treatment plan, mother

6

had not demonstrated sobriety or engaged in any mental health treatment; and (4) maternal grandmother continued to supervise mother's interaction with the children. Those findings are sufficient to support the magistrate's determination that a "compelling reason" existed to award custody of the children to grandmother.

¶ 15    We reject mother's argument that the magistrate's findings suggest that the court impermissibly shifted the burden to mother to prove that she was sober and could safely care for the children. The magistrate's observation that "there's simply no proof of sobriety" was not an attempt to shift the burden of proof to mother; it was a finding that mother had failed to comply with her treatment plan, which required her to "demonstrate a lifestyle free of drugs and alcohol, through consistently clean urinalyses . . . and positive reports from providers." "It is the parent's responsibility to secure compliance with and success of a treatment plan." *People in Interest of S.M.A.M.A.*, 172 P.3d 958, 962 (Colo. App. 2007). Therefore, the magistrate could properly consider that mother had failed to demonstrate her sobriety at any point during the case. *See People in Interest of L.K.*, 2016 COA 112, ¶¶ 35-39 (finding of treatment plan noncompliance based on the evidence presented did

not amount to the juvenile court improperly shifting the burden of proof), *rev'd on other grounds sub nom. C.K. v. People*, 2017 CO 111.

¶ 16    Finally, to the extent mother asserts that the magistrate was required to explain which factors under section 14-10-124(1.5)(a), C.R.S. 2024, she considered in issuing the APR ruling, we disagree. A court deciding an APR motion within a dependency and neglect proceeding is "not required to apply the best interests factors specifically listed under section 14-10-124(1.5)(a)." *L.B.*, 254 P.3d at 1208.  Nonetheless, the magistrate here noted that she considered the factors under section 14-10-124(1.5)(a) as well as the best interests of the children under the Children's Code.  But under the circumstances, she had no obligation to delineate the specific statutory factors on which she relied in reaching her conclusions.  *See L.B.*, 254 P.3d at 1208.

¶ 17    Accordingly, because the record supports the magistrate's findings, and the magistrate applied the correct legal standard and burden of proof, we discern no abuse of discretion in the entry of the APR order.

### III.   Disposition

¶ 18    The judgment is affirmed.

JUDGE FOX and JUDGE SCHUTZ concur.